IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CARROL OWENS,

                Plaintiff,

v.                                      CIVIL ACTION NO.   5:12-cv-03620

FCI BECKLEY,

                Defendant.

MEMORANDUM OPINION AND ORDER

The Court has reviewed Plaintiff's *Motion for Preliminary Injunction and/or Temporary Restraining Order* (Document 8).   By Standing Order (Document 2) entered July 24, 2012, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On January 31, 2013, the Magistrate Judge submitted his Proposed Findings and Recommendation ("PF&R") (Document 28), wherein he recommended that this Court deny Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order and refer this matter back to him for further proceedings.   On February 8, 2013, Plaintiff timely filed his objections to the PF&R (Document 29), which the Court has reviewed.   After thorough review and consideration, the Court finds, for the reasons stated herein, that Plaintiff's objections should be overruled and the Magistrate Judge's PF&R should be adopted.

## I.       FACTUAL HISTORY

Magistrate Judge VanDervort's PF&R sets forth in detail Petitioner's current motion.   The Court now incorporates by reference those facts and procedural history.   To provide context for the ruling herein, the Court provides the following summary.

On July 24, 2012, Plaintiff, an inmate at FCI Beckley, filed his *pro se* letter-form Complaint (Document 1), wherein he alleges a "[d]enial of religious accommodation & unfair and ineffective grievance procedure." (*Id.* at 1.)   Plaintiff indicates that he is a practitioner of "New Age Druidry" and states that he is "being denied accommodation to [his] legitimate religious needs." (*Id.*)   Plaintiff states that on March 7, 2012, he submitted a "New or Unfamiliar Religious Components Questionnaire" form [BP-S822.53] to Chaplain Largent "showcasing the introduction of 'New Age Druidry' in accord with [his] religious faith base practice." (*Id.*)

With no response forthcoming, Plaintiff states that on May 1, 2012, he filed an "Informal Resolution Form" indicating that "the (BP-5822.053) has yet to be processed which significantly increases the 120 day process time, so that [he] may practice [his] religious Faith base practice." (*Id.* at 1 and 5.) Plaintiff states that on May 1, 2012, Chaplain Largent responded "[t]he request is being processed and will be completed before 120 days." (*Id.* at 1 and 6.)   On May 9, 2012, Plaintiff indicates that he filed a formal BP-9, Request for Administrative Remedy, in which he "thoroughly addresse[d] the issues" and reiterated that he is "being denied accommodation to [his] religious needs." (*Id.* at 1 and 7.)   On June 7, 2012, having not received a "Notice of Receipt" of his BP-9, Plaintiff states that  he sent an "Inmate Request to Staff" form to Ms. Seafus, the Administrative Remedy Coordinator at FCI Beckley, asking for one. (*Id.* at 1.)   Plaintiff states that on June 14, 2012, Ms. Seafus responded that "no receipts are pending in the system" and later

2

in a conference call, she informed him his BP-9 form had been voided because filing a BP-9 "was not the correct avenue to address 'being denied accommodation to [his] legitimate religious needs.'" (*Id.*) Plaintiff states that Ms. Seafus told him "[he] needed to talk with Chaplin Largent to be provided the religious items that [he] specifically requested in [his] (BP-S2822.53) ["New or Unfamiliar Religious Components Questionnaire" form]." (*Id.*)

Plaintiff states that on June 14, 2012, Chaplain Largent told him his BP-S822.53 request had been denied because "[his] religious needs can be accommodated through the Wiccan group." (*Id.*) Plaintiff states that on June 17, 2012, he submitted an "Inmate Request to Staff" form to Chaplain Largent requesting specific items so that his religious needs could be accommodated through the Wiccan program. (*Id.*)  Plaintiff asserts that Chaplin Largent told him that he could add an additional time slot for Plaintiff to practice his religion and requested more information about his faith and a picture of the sacred pipe, which Plaintiff stated he provided the following day. (*Id.*) Plaintiff also states that on June 18, 2012, he submitted a BP-10 appeal of his voided BP-9 request. (*Id.*)

Plaintiff states that on June 20, 2012, he received "an official response from the warden's office . . . which stated '[y]our request will be accommodated through participation with the Wiccan program or as an individual practitioner.'" (*Id.* at 1 and 10.) Plaintiff states on June 25, 2012, he spoke with Chaplain Largent about his June 17, 2012 Inmate Request to Staff, and Chaplain Largent responded that Plaintiff needed to get approval from the regional and central offices. (*Id.* at 1.) Plaintiff asserts that he told Chaplain Largent that the Warden had already approved his request by stating his religious needs would be accommodated through the Wiccan program or as an individual practitioner. (*Id.*)

3

Plaintiff states that on June 26, 2012, Chaplain Largent "retaliate[d] against [him] and the entire Wiccan group by searching the wiccan locker . . . and confiscate[ing] the group's 'Book of Shadows' and a 9ft. cord" which "hindered and interfered with [the] group's religious service on [June 29, 2012.]" (*Id.*) Plaintiff states that on June 27, 2012, he submitted another Informal Resolution form concerning the continued denial of religious needs. (*Id.*) Plaintiff asserts that on July 8, 2012, Chaplin Largent responded that "[h]is request for a new religion was denied" and that "[i]f he desires to add a new component to the Wiccan program he must submit a new religious component for the Wiccan program." (*Id.* at 1 and 12.) Plaintiff contends that Chaplain Largent's response is "clearly in violation to the official response issued from the warden's office." (*Id.* at 1.)

Plaintiff asserts that by "den[ying] [him] opportunities to engage in activities that are fundamental to [his] faith based practice i.e., (denying [him] use of requested items specifically approved by the warden's office)," Defendants are violating the Equal Protection Clause of the Fourth Amendment, the First Amendment Free Exercise Clause, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb. (*Id.* at 2.) Plaintiff also contends that "[t]he grievance procedure here at FCI-Beckley is no longer in compliance with the minimum standards and it no longer is fair and effective." (*Id.*)   In support, Plaintiff states that his first grievance was voided, "however, policy does not provide for any grievance to be 'voided.'" (*Id.*)   Plaintiff requests "an immediate inquiry and investigation be conducted into to examine such violations of fundamental policies, rules, regulations, and laws." (*Id.*)   Plaintiff also requests that "this institution be [ordered] to allow me to practice my beliefs in accordance with 'New Age Druidry.'" (*Id.*)

4

## II.    PROCEDURAL HISTORY

On August 6, 2012, Plaintiff filed a Complaint (Document 4), an Application to Proceed Without Prepayment of Fees and Costs (Document 5), a Motion for Preliminary Injunction and/or Temporary Restraining Order (Document 8), and a Declaration in Support (Document 9).

In the Complaint, Plaintiff names FCI Beckley, Warden Ziegler, Associate Warden Mosley, Chaplain Largent, Chapel Officer Vance, and Remedy Coordinator Seafus as Defendants. (Document 4.)   Plaintiff reiterates the basic allegations in his letter-form Complaint and describes the violations committed by each of the Defendants. (*Id.*) Based on the Defendants' actions, Plaintiff asserts that they are "violating [his] 1st [A]mendment rights, 'to petition the government for redress of grievances' (denial of fair and effective grievance procedures), [t]he Free Exercise Clause, the Establishment Clause, and [his] 14th [A]mendment rights to 'Equal Protection' and . . . [the] 'Religious Freedom Restoration Act.'" (*Id.* at 10.)

Plaintiff states that "FCI-Beckley's grievance procedure as practiced is not in compliance with BOP policy statement P1330.16, nor Code of Federal Regulation (CFR)." (*Id.* at 9.) Plaintiff also alleges that staff at FCI-Beckley violate policy by requiring inmates to submit their complaints on Inmate Request to Staff forms and then "transfer[ing]" them to the Request for Informal Resolution forms, thereby "controlling the content submitted" and the issues presented to the next level, "which ultimately denies inmates the right to due process and access to the courts." (*Id.*) Plaintiff also alleges that staff at FCI-Beckley "engage[] in mis-conduct of throwing the grievances away or not submitting it through the proper channels or purposely withholding responses to run time limits out so as to bar further access to the next level, not to mention using

5

such tactics as harassment, intimidation, and retaliation to keep inmates from pushing issues any further." (*Id.* at 9-10.)

Plaintiff states that Warden Ziegler refused and failed to correct misconduct of the staff under his supervision thereby "creat[ing] a policy and custom which allows and encourages such illegal acts, which lets his staff continue to circumvent policy and procedure and violate the constitutionally protected rights e.g. (freedom to practice one's religion, right to access the courts.)" (*Id.* at 9.)   Specifically, Plaintiff alleges that Warden Ziegler failed to correct his staff's behavior with regard to Plaintiff's accommodation and also failed to inquire into why Plaintiff had not been accommodated. (*Id.*)

Plaintiff asserts that Assistant Warden Mosley "directly participated; learned of the violations of [his] rights and failed to do anything to fix the situation; thereby creating a policy and custom which allows and encourages such illegal acts." (*Id.* at 9.)   Specifically, Plaintiff alleges that "[Assistant Warden] Mosley and [Ms.] Seafus conspire[d] together to violate [his] rights to practice [his] religion and [his] right to access the court by intentionally violating policy by 'voiding' [his] (BP-9)." (*Id.* at 8-9.)

Plaintiff states that on June 25, 2012, Chaplain Largent denied his June 17, 2012 Inmate Request to Staff, five days after delivering the May 21, 2012 response from the Warden's office stating that Plaintiff would be accommodated. (*Id.* at 7.) Plaintiff also alleges that Chaplain Largent retaliated against him and the Wiccan group by searching their locker and confiscating their Book of Shadows and a nine foot cord, thereby interfering with their day of worship and ritual on June 29, 2012. (*Id.*)

Plaintiff also alleges that on June 29, 2012, and July 6, 2012, Chapel Officer Vance "intentionally hinder[ed] and interefere[d] with [the Wiccan group's] worship ritual." (*Id.* at 8.) Specifically, Plaintiff states that Officer Vance repeatedly came into the room where the Wiccan group was gathered for worship thereby "desecrate[ing] [their] sacred space and br[eaking] [their] circle." (*Id.*)

Plaintiff states that Remedy Coordinator Seafus told him that his May 9, 2012 BP-9 had been voided and that "the Administrative Remedy procedure was not the correct avenue to address the denial of accommodation to [his] legitimate religious needs." (*Id.* at 8.)   Plaintiff also states that he has received no response to his "Notice of Receipt" of his July 10, 2010 grievance. (*Id.*) Plaintiff alleges that "[he] [is] being denied Administrative Remedy Process." (*Id.*) Plaintiff also alleges that "Seafus is deliberately indifferent to [his] protected right to access the courts by intentionally sabotaging [his] attempts at resolution through the remedy procedure by purposely violating proper procedure." (*Id.*)

Plaintiff asserts that Defendants are violating his First Amendment rights, his right "to petition the government for a redress of grievances," his rights under the Equal Protection clause of the Fourteenth Amendment, and the RFRA. (*Id.* at 10.) Plaintiff requests a "preliminary injunction and/or temporary restraining order" and monetary damages. (*Id.* at 11.)

In the Motion for Preliminary Injunction and/or Temporary Restraining Order, Plaintiff alleges six grounds for relief: (1) "[t]he violation of [his] 1st amendment rights is ongoing . . . which places a substantial burden upon [his] exercising [] his religious beliefs and practices;" (2) "[t]he award of monetary damages alone will not remedy or solve the current problems associated with this case;" (3) "[w]ithout this court's help [he] will continue to suffer irreparable harm; (4)

"[he] is likely to succeed at trial;" (5) "[he] will suffer even more if the injunction is denied than the defendants will suffer if it is granted;" and (6) "[a] preliminary injunction will serve the public interests." (Document 8 at 1.) Plaintiff requests that the Court order FCI-Beckley to: (1) "[i]ncorporate 'New Age Druidry' as its own religious program;" (2) "[i]ssue ID's to all members designating them as 'New Age Druidry;'" (3) "[p]rovide accommodation to all religious components requested in the (BP-S822) submitted on 3-7-2012;" (4) "[p]rovide for an expense account budget sizeable enough to cover initial purchase order of requested items found in (BP-S822);" (5) "[p]rovide for 2 weekly outdoor access and 2 2hr. slots indoor study time weekly;" (6) "[t]o enjoin the staff of FCI-Beckley from engaging in retaliatory tactics ." (*Id.*)   In his Declaration, Plaintiff reiterates the claims made in his Motion for Preliminary Injunction and/or Temporary Restraining Order. (Document 9.)

On October 11, 2012, Magistrate Judge VanDervort found that Plaintiff had potentially alleged a <u>Bivens</u> claim and a claim under the Religious Freedom and Restoration Act. (Document 10 at 8.) Therefore, Magistrate Judge VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs and ordered the Clerk to issue process upon the Defendants as specified in Rule 4(i)(1) – (3) of the Federal Rules of Civil Procedure. (*Id*. at 9)

On January 7, 2013, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 24), a Memorandum in Support (Document 25), and attached exhibits.[1]  Defendants assert eleven grounds for dismissing Plaintiff's Complaint: "(1) Plaintiff failed to exhaust administrative remedies; (2) Defendants cannot be sued in their official capacities; (3) Plaintiff cannot recover for emotional or psychological damages without a showing

---

[1] The Magistrate Judge outlines the twenty-one (21) attached exhibits to Defendants' motion. (PF&R at 8-9.) The Court incorporates by reference the facts and procedural history surrounding Defendants' motion.

of physical injury; (4) Plaintiff cannot sustain a <u>Bivens</u> action against the Bureau of Prisons; (5) Plaintiff has not presented a valid First Amendment claim; (6) Plaintiff has no Religious Freedom Restoration Act claim; (7) Plaintiff has no Equal Protection claim; (8) Plaintiff cannot establish retaliation claims against Chaplain Largent; (9) Officer Vance did not interfere with worship practices of the Wiccan Congregation; (10) Plaintiff has not been denied access to the courts; and (11) Defendants are entitled to qualified immunity." (Document 24 at 1-2.)

By Order entered January 8, 2013, Plaintiff was notified of his right to file a response to Defendants' motion and submit Affidavit(s) in support on or before February 8, 2013. (Document 26). On January 31, 2013, Magistrate Judge VanDervort submitted his PF&R (Document 28).   On February 8, 2013, Plaintiff filed his Objections to the PF&R (Document 29), his "Motion in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 30), and supporting Declarations/Affidavits. (Documents 31-37.)

### III.    STANDARD OF REVIEW

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).   When reviewing portions of the PF&R *de novo,* the Court will consider the fact that Plaintiff is acting *pro se,* and his

pleadings will be accorded liberal construction.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

## IV.    APPLICABLE LAW

The Fourth Circuit Court of Appeals has explained the difference between temporary restraining orders and preliminary injunctions as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.'

*Hoechst Diafoil Company v. Nan Ya Plastics Corporation*, 174 F.3d 411, 422 (4th Cir.1999) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974)).

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

The United States Supreme Court has held that in order to obtain a preliminary injunction, a plaintiff must establish: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

10

## V.    DISCUSSION

### A.  Magistrate Judge's Findings

In reading Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order together with his Complaint, Magistrate Judge VanDervort analyzed the motion under the preliminary injunction standard and found that Plaintiff has not established: (1) "that he is likely to suffer irreparable harm in the absence of preliminary relief" nor (2) "that he is likely to succeed on the merits." (PF&R at 9-11); *Winter*, 555 U.S. at 20. Therefore, the Magistrate Judge recommended that this Court deny Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order.

First, the Magistrate Judge found that "it does not clearly appear that immediate and irreparable injury, loss, or damage will result to Plaintiff if a preliminary injunction is not granted." (PF&R at 10.) The Magistrate Judge focused on Plaintiff's request and explained why Plaintiff has not met his burden for a preliminary injunction. (*Id.* at 10-12.) The Magistrate Judge examined Plaintiff's request that the Court order FCI- Beckley to recognize New Age Druidry as "its own religious program." (*Id.*); (Document 8 at 1.)[2] He noted that "Plaintiff appears to acknowledge that Associate Warden Mosely indicated that Plaintiff's religious needs would be accommodated through the Wiccan program or as an individual practitioner." (PF&R at 10.) However, the Magistrate Judge found that Plaintiff "does not explain how he is suffering irreparable harm as a result of his religion being accommodated through the Wiccan program." (*Id.*) The Magistrate Judge then reviewed Plaintiff's request that the Court order FCI- Beckley to provide funds for purchasing religious items requested in BP-S822.53 and the means and location to practice his

---

2  Specifically, Plaintiff requests that the Court order FCI-Beckley to: (1) "[i]ncorporate 'New Age Druidry' as its own religious program;" and (2) "[i]ssue ID's to all members designating them as 'New Age Druidry." (Document 8 at 1.)

11

religion.[3] (*Id.*) He noted that Plaintiff "does not allege how the lack of the items set forth in BP-S822.52 are causing irreparable harm." (*Id.*)   Then, the Magistrate Judge considered Plaintiff's request that the Court order FCI- Beckley to "[t]o enjoin the staff of FCI-Beckley from engaging in retaliatory tactics." (*Id.*); (Document 8 at 1.)[4] Although he noted that Plaintiff alleges that Chaplain Largent retaliated against the Wiccan group by searching their locker and confiscating their Book of Shadows and a nine foot cord, thereby interfering with their day of worship on June 29, 2012, he found that "there is no indication that Plaintiff is suffering irreparable harm as a result [of the] retaliation or as a result of the above items being confiscated." (PF&R at 11.)   The Magistrate Judge also stressed that "preliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances." (*Id.* at 10) (citing *Taylor v. Freeman,* 34 F.3d 266, 269-70 (4th Cir.1994)).

Second, the Magistrate Judge found that "it is unclear at this point in the proceedings whether Plaintiff will succeed on the merits." (PF&R at 10.) He reached this conclusion by examining Plaintiff's claims and the law governing those claims, as well as the grounds for dismissal contained in Defendants' Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment. (Documents 24 and 25.)

The Magistrate Judge then stated the applicable law concerning Plaintiff's First Amendment and religious Freedom Restoration Act claims. (PF&R at 11.)   Initially, he noted that "[t]o state a claim under the First Amendment that prison officials have violated an inmate's right

---

3 Plaintiff requests that the Court order FCI-Beckley to: (3) "[p]rovide accommodation to all religious components requested in the (BP-S822) submitted on 3-7-2012;" (4) "[p]rovide for an expense account budget sizeable enough to cover initial purchase order of requested items found in (BP-S822); and (5) "[p]rovide for 2 weekly outdoor access and 2 2hr. slots indoor study time weekly." (Document 8 at 1.)

4 "[S]uch as but not limited to: harassment, threats, intimidation, false disciplinary reports, transfer to another prison as an attempt to moot his civil proceeding, and any and all adverse action will be construed as retaliation." (Document 8 at 1.)

to free exercise of religion, a plaintiff must prove that he holds a sincere religious belief and that the official action substantially burdened his exercise of that belief." (*Id.*) (citing *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 699 (1989)). Then he analyzed the Religious Freedom Restoration Act, which "forbids the government from 'substantially burden[ing] a person's exercise of religion' unless the government can 'demonstrate[] that application of the burden to the person (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.'" (PF&R at 11) (quoting 42 U.S.C. § 2000bb-1(b)). The Magistrate Judge then made reference to Defendants' arguments concerning the merits of Plaintiff's claim that they are violating his rights under the Free Exercise Clause and the Religious Freedom Restoration Act. (PF&R at 11.) The Magistrate Judge highlighted that "Defendants argue there is no indication that Plaintiff's religious practices have been substantially burdened or prohibited." (*Id.*)

The Magistrate Judge then considered the applicable law regarding an Equal Protection claim. (*Id.*)   He found that "[i]n order to state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff." (*Id.*) (citing *Johnson v. California,* 543 U.S. 499 (2005)). The Magistrate Judge then referenced Defendant's argument concerning Plaintiff's Equal Protection claim. (PF&R at 11.)   He noted that "Defendants argue that they denied the use of a pipe and tobacco because these items are not required by the Wiccan or New Age Druidry religions." (PF&R at 11-12.) He also highlights that "Defendants explain there was no discriminatory animosity towards Plaintiff, but prison officials have a legitimate interest in controlling the use of tobacco in religious services as tobacco is a prohibited substance within the BOP." (*Id.* at 12.)

13

Based on Plaintiff's Complaint, Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order, applicable law and Defendant's arguments contained in their Motion to Dismiss, the Magistrate Judge found that Plaintiff has failed to establish that he is likely to suffer irreparable harm in the absence of preliminary relief and that he is likely to succeed on the merits. (PF&R at 9-12.) Therefore, he recommended that Plaintiff's request for a temporary restraining order and injunctive relief (Document 8) be denied." (PF&R at 12.)

### B. Petitioner's Objections

Plaintiff submitted four objections to the Magistrate Judge's PF&R. Although Plaintiff is acting *pro se*, and thus, his pleadings were accorded liberal construction (*See Estelle*, 429 U.S. at 106; *Loe*, 582 F.2d at 1295), the Court finds that Plaintiff's objections are without merit.

First, Plaintiff states that "[i]n the Magistrate Judge's Background and Analysis section of [the] PF&R he includes information contained in the Defendant's Motion to Dismiss/Summary Judgment." (Document 29 at 1.) Plaintiff acknowledges that this decision was "clearly within the Magistrate's discretion" but argues that "by quoting content contained in the Defendant's motion without also equally taking into consideration information contained in the plaintiff's Motion in Opposition to the Defendant's Motion severely prejudices the plaintiff." (*Id.*) Plaintiff questions whether "the magistrate judge issue[d] his PF&R prematurely, without giving plaintiff [an] opportunity to respond to the defendant's Motion to Dismiss/Summary Judgment, especially since his PF&R contained information from Defendant's Motion." (*Id.*)

Second, Plaintiff seemingly objects to the Magistrate Judge's inclusion of the statement "Defendants argue there is no indication that plaintiff's religious practices have been substantially burdened or prohibited." (*Id.*)  Plaintiff argues that because "[he] has not submitted his Motion to

Oppose or otherwise dispute this contention, as of yet, contained within Defendant's Motion to Dismiss/Summary Judgment and therefore, the inclusion of such bald faced allegation severely prejudices [him.]" (*Id.*) Plaintiff contends that he "clears up these ambiguously regarded contentions with clear precision" by "stat[ing] that he has been barred from practicing his religion." (*Id.*)

> Third, Plaintiff similarly objects to the Magistrate Judge's inclusion of the following:
>
> > Defendants argue that they denied the use of a pipe and tobacco because these items are not required by the Wiccan or New Age Druidry religions. Defendants explain there was no discriminatory animosity towards Plaintiff, but prison officials have a legitimate interest in controlling the use of tobacco in religious services as tobacco is a prohibited substance within the BOP.

(Document 29 at 2) (quoting PF&R at 11-12.) Plaintiff reiterates that"[he] has not yet submitted his Motion to Oppose or otherwise dispute defendants' contentions." (Document 29 at 2.) Plaintiff argues that "defendants are not in any type of position to dictate to the plaintiff his religious beliefs and practices of New Age Druidry." (*Id.*) Plaintiff states that "[i]n support of this, the court shall find in its record Plaintiff's Exhibits 'B,' 'C,' 'F' which state that New Age Druidry requires the use of the Sacred Pipe and Nicotiana Tobacum to properly worship effectively." (*Id.*)

Finally, Plaintiff states that "[he] has been completely barred from practicing his religion because the Wiccan group does not want New Age Druidry Participants in their group and does not want Tobacco in their group either." (*Id.* at 2.)   Therefore, Plaintiff asserts that "[he] cannot and has not yet been accommodated with even the least restrictive means." (*Id.*)

### C.  The Court's Findings

The Court finds that Plaintiff's objections should be overruled. Plaintiff's first three objections concern the Magistrate Judge's inclusion of portions of Defendants' Motion to Dismiss,

15

or in the Alternative, Motion for Summary Judgment in his analysis of Plaintiff's likelihood of success on the merits. (Document 29.) Plaintiff argues that he has been prejudiced because the Magistrate Judge issued his PF&R before he had a chance to respond to Defendants' motion. (*Id.*) The Court finds that Plaintiff's objections do not relate to the Magistrate Judge's findings based upon the information that was before him at the time, and therefore, should be overruled.

Magistrate Judge VanDervort found Plaintiff was not entitled to a preliminary injunction because "it is unclear at this point in the proceedings whether Plaintiff will succeed on the merits." (PF&R at 10.)   In reaching this conclusion, the Magistrate Judge considered Plaintiff's Complaint, Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order, applicable law, and Defendants' arguments contained in their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (PF&R.) Based on the record at the time, the Magistrate Judge found that Plaintiff was not likely to succeed on the merits, and therefore, was not entitled to a preliminary injunction. (*Id.* at 11-12.) The Magistrate Judge did not rule on Defendants' motion nor did he make specific findings with regard to Defendants' arguments. Therefore, Plaintiff has not been prejudiced and his objections should be overruled.

Plaintiff's last "objection" is a statement, rather than an objection to any specific portion of the PF&R.   Therefore, the Court need not conduct a d*e novo* review, *See,* 28 U.S.C. § 636(b)(1)(C), and finds that Plaintiff's objection should be overruled.

## VI.   CONCLUSION

Based on the findings herein, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document 28), denying Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order, be **ADOPTED** and that Plaintiff's

16

objections to the PF&R (Documents 29) be **OVERRULED.** The Court **ORDERS** that Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order (Document 8) be **DENIED** and that this matter be **REFERRED** back to Magistrate Judge VanDervort for further proceedings.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        February 19, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

17