**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **CARROL L. OWENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:12-3620** |
| | ) | |
| **FCI BECKLEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court are the following Motions: (1) Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 24.), filed on January 7, 2013; and (2) Plaintiff's "Motion in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 30.), filed on February 8, 2013.  The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss. (Document No. 26.) On February 8, 2013, Plaintiff filed his Response in Opposition to the Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment. (Document No. 30.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should be granted and Plaintiff's "Motion in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On July 24, 2012, Plaintiff, acting *pro se* and an inmate at FCI Beckley, filed his letter-form

Complaint. (Document No. 1.) In his letter-form Complaint, Plaintiff states that he is "being denied accommodation to my legitimate religious needs." Plaintiff states that he is of the "New Age Druidry" faith. Plaintiff indicates that he submitted a "New or Unfamiliar Religious Components Questionnaire" form [BP-S822.53] to Chaplain Largent in March, 2012, notifying Chaplain Largent of his religious faith. Plaintiff indicates that, having no response, he submitted an Informal Resolution form to Chaplain Largent on May 1, 2012, that his religious needs were not being met. Plaintiff states that Chaplain Largent responded on May 3, 2012, indicating that his complaint was being processed and would be resolved in 120 days. Plaintiff indicates that he filed a BP-9 on May 9, 2012, making the same complaint.[1] When Plaintiff did not receive a "Notice of Receipt" of his BP-9, he submitted an Informal Request to Staff form to Ms. Seafus, the Administrative Remedy Coordinator at FCI Beckley, on June 7, 1012. Plaintiff states that he spoke with Ms. Seafus on June 14, 2012, and she informed him that the ordinary administrative remedy process beginning with the filing of a BP-9 was not the correct way to complain about his religious rights and therefore his BP-9 was regarded as void. Plaintiff states that Ms. Seafus told him that the proper course was to file the "New or Unfamiliar Religious Components Questionnaire" form [BP-S822.53]. Plaintiff states that he then spoke with Chaplain Largent on June 14, 2012, and Chaplain Largent told him that his BP-S822.53 request had been denied because his religious needs could be accommodated through the Wiccan group. Plaintiff states that he submitted an Inmate Request to Staff form to Chaplain Largent on June 17, 2012, requesting that he be provided items necessary to his religious faith through the Wiccan program. Plaintiff indicates that Chaplain Largent told him that he could make a time

---

[1] 28 C.F.R. § 542.10(a) provides that inmates may participate in the Bureau of Prisons' administrative remedy program "to seek formal review of an issue relating to *any aspect* of his/her own confinement." (Emphasis added.)

available for Plaintiff to engage in his religious practice and requested more information about his religious faith including a picture of a sacred pipe used in religious ceremonies. Plaintiff states that he submitted a report about the sacred pipe on June 18, 2012. Plaintiff states that on that same day he also submitted a BP-10 appeal of the voiding of his BP-9 complaint. Plaintiff states that on June 20, 2012, he received "an official response" from Associate Warden Mosley indicating that his religious needs would be accommodated through the Wiccan program or as an individual practitioner. Plaintiff states that he spoke with Chaplain Largent on June 25, 2012, about his June 17, 2012, Inmate Request to Staff form and Chaplain Largent told him that he [Chaplain Largent] needed to get regional and central office approval. Plaintiff states that he told Chaplain Largent that the Warden had already indicates that his religious needs would be accommodated through the Wiccan program or as an individual practitioner. Plaintiff states that on June 26, 2012, Chaplain Largent retaliated against him by searching the Wiccan group's locker and confiscating its "Book of Shadows," a religious text, and a nine foot cord thereby hindering and interfering with the Wiccan group's June 29, 2012, religious service. Plaintiff states that he submitted a further Informal Resolution form on June 27, 2012, respecting the continuing denial of his religious rights and Chaplain Largent responded that his request for recognition of his religious faith was denied and Plaintiff could request the addition of additional items to the Wiccan program. Plaintiff asserts that Chaplain Largent's response was inconsistent with the Warden's "official response" that Plaintiff could practice his religious faith through the Wiccan program or as an individual practitioner. Plaintiff charges that by denying him the items and means necessary for the practicing of his religious faith, Defendants are violating his First Amendment rights, his rights under the Equal Protection Clause of the Fourteenth Amendment and the Religious Freedom Restoration Act

[RFRA], 42 U.S.C. § 2000bb. Plaintiff further complains that the administrative remedy process at FCI Beckley "is no longer in compliance with the minimum standards and it no longer is fair and effective." Plaintiff asserts that nothing in Bureau of Prisons policy permits the voiding of an administrative grievance. Plaintiff requests that "an immediate inquiry and investigation be conducted into such violations of fundamental policies, rules, regulations, and laws. And this institution be [ordered] to allow me to practice my beliefs in accordance with 'New Age Druidry'."

On August 6, 2012, Plaintiff filed a Complaint (Document No. 4.), an Application to Proceed Without Prepayment of Fees and Costs (Document No. 5.), and a Motion for Preliminary Injunction and/or Temporary Restraining Order (Document No. 8.) and Declaration (Document No. 9.) In his Complaint (Document No. 4.), Plaintiff names as Defendants FCI Beckley, Warden Ziegler, Associate Warden Mosley, Chaplain Largent, Chapel Officer Vance and Remedy Coordinator Seafus. Plaintiff reiterates the basic allegations contained in his letter-form Complaint and states specifically the conduct of each Defendant in violation of his rights. Plaintiff states that in voiding his complaint and not giving him any notification of it, staff at FCI Beckley did not follow the BOP's policies and regulations in considering his complaints. Plaintiff further states that staff at FCI Beckley (1) require inmates to submit their complaints on Inmate Request to Staff forms and then restate inmates' complaints on Request for Informal Resolution forms thereby controlling the issues which inmates raise at all levels of the administrative remedy process in denial of their rights of due process and access to the Courts, (2) throw inmate complaints away, (3) do not process them "through the proper channels" and (4) withhold from responding until the end of the time by which responses are due so that the inmates will be barred from proceeding to the next level. Plaintiff states that Warden Ziegler failed and refused to correct the actions of the other Defendants under his

4

supervision which was not in conformity with his requirement that Plaintiff be accommodated thereby allowing and encouraging them to circumvent BOP policy and procedure and violate his rights to practice his religion and access the Courts. Plaintiff states that he spoke with Associate Warden Mosley in March, 2012, about the BP-S822.53 which he had submitted to Chaplain Largent and learned that Chaplain Largent had given it to Associate Warden Mosley. Plaintiff states that when he asked Assistant Warden Mosley about his BP-S822.53 several times in April, 2012, she first told him that she had not discussed it with Chaplain Largent and then "refuse[d] to talk to me about this issue." Plaintiff states that he submitted his BP-9 in May, 2012, and Assistant Warden Mosley and Remedy Coordinator Seafus violated his right to practice his religion and access the Courts by voiding his BP-9. Thus, Plaintiff contends that Assistant Warden Mosley knew of, participated in and failed to correct the violation of his rights "thereby creating a policy and custom which allows and encourages such illegal acts." Plaintiff states that Chaplain Largent gave him the May 21, 2012, response of the Warden's Office that he would be accommodated about a month later on June 20, 2012, and then denied his June 17, 2012, Inmate Request to Staff on June 25, 2012. Plaintiff further states that Chaplain Largent retaliated against him and the Wiccan group by confiscating their Book of Shadows and a nine foot cord and interfering with their religious services on June 29, 2012. Plaintiff claims that Chaplain Largent violated his rights by "[i]ntentionally denying me accommodation to my legitimate religious needs after the warden's office issued a response that I be accommodated . . .." Plaintiff states that Chapel Officer Vance "intentionally hindered and interfered" with the Wiccan group's religious services on June 29 and July 6, 2012. Plaintiff states that Remedy Coordinator Seafus told him that his May 9, 2012, BP-9 was void and claims of denial of religious rights could not be considered through the administrative remedy

5

procedure. Plaintiff states further that he requested a "Notice of Receipt" for his July 10, 2012 grievance and received none. Plaintiff alleges that "I am being denied administrative remedy process. Seafus is deliberately indifferent to my protected right to access the courts by intentionally sabotaging my attempts at resolution through the remedy procedure by purposely violating proper procedure." Plaintiff asserts as he did in his letter-form Complaint that Defendants are violating his First Amendment rights, his rights under the Equal Protection Clause of the Fourteenth Amendment and the Religious Freedom Restoration Act [RFRA], 42 U.S.C. § 2000bb.[2] He requests injunctive relief and monetary damages.

In his Motion for Preliminary Injunction and/or Temporary Restraining Order (Document No. 8.), Plaintiff states that the denial of his religious rights is continuing, monetary relief is insufficient, he is suffering irreparable harm, injunctive relief serves the public interest and he is likely to succeed at trial. Plaintiff requests that the District Court order FCI Beckley to (1) regard New Age Druidry a separate religious program, (2) provide funds for purchasing items stated in his BP-S822.53 and the means and locations for practicing the religion, and (3) prohibit staff at FCI Beckley from retaliating against him and others in any way based upon his and their practice of their religious faith. By his Declaration (Document No. 9.), Plaintiff reiterates the statements which he made in his Motion for Preliminary Injunction and/or Temporary Restraining Order.

In screening Plaintiff's Complaint, the undersigned determined that Plaintiff had potentially stated a claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403

---

[2] Plaintiff has submitted as exhibits a copy of his BP-S822.53, administrative complaints and communications with Defendants; information about the New Age Druidry religious faith; and his ordination with, Doctorate of Divinity from and charter for a congregation of the Universal Life Church in Hendersonville, North Carolina.

6

U.S. 388, 395 - 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Document No. 10.) By Order entered on October 11, 2012, the undersigned granted Plaintiffs' Application to Proceed Without Prepayment of Fees and ordered the Clerk "to issue process in this case by preparing and serving a Summons including a copy of Plaintiff's letter-form Complaint (Document No. 1.), Complaint (Document No. 4.) and Exhibits thereto, and Motion for Preliminary Injunction and/or Temporary Restraining Order (Document No. 8.) and Declaration (Document No. 9.) upon the Defendants as specified in Rule 4(i)(1) - (3) of the Federal Rules of Civil Procedure." (Id..)

On January 7, 2013, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 24 and 25.) Defendants argue that Plaintiff's Complaint should be dismissed based on the following: (1) "Plaintiff failed to exhaust administrative remedies" (Document No. 25, pp. 8 - 13.); (2) "Defendants cannot be sued in their official capacities (Id., p. 13.); (3) "Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury" (Id., pp. 13 - 14.); (4) "Plaintiff cannot sustain a Bivens action against the Bureau of Prisons" (Id., p. 14.); (5) "Plaintiff has not presented a valid First Amendment claim" (Id., pp. 14 -21 .); (6) "Plaintiff has no Religious Freedom Restoration Act claim" (Id., pp. 21 - 22.); (7) "Plaintiff has no Equal Protection claim" (Id., pp. 22 - 23.); (8) "Plaintiff cannot establish retaliation claims against Chaplain Largent" (Id., pp. 23 - 25.); (9) "Officer Vance did not interfere with worship practices of the Wiccan Congregation" (Id., pp. 25 - 27.); (10) "Plaintiff has not been denied access to the court" (Id., p. 27.); and (11) "Defendants are entitled to qualified immunity" (Id., pp. 28 - 32.).

As Exhibits, Defendants attach the following: (1) The Declaration of Sarah Lilly (Document No. 24-1, pp. 1 - 3.); (2) A copy of SENTRY Administrative Remedy Generalized Retrieval from

April 9, 2012, through June 6, 2012 (Id., pp. 5 - 25.); (3) Plaintiff's Administrative Remedies regarding Remedy ID 689645 (Id., pp. 27 - 49.); (4) The Declaration of D. Largent (Document No. 24-2, pp. 1 - 6.); (5) A copy of Plaintiff's "New or Unfamiliar Religious Components Questionnaire" (Id., pp. 8 - 11.); (6) A copy of an e-mail message from Jesus M. Huertas, Chaplaincy Administrator for the Department of Justice, to Chaplain Largent dated May 3, 2012 (Id., p. 13.); (7) A copy of a "Memorandum for Joel Ziegler, Warden" dated May 15, 2012, regarding an "Accommodation Request" (Id., p. 15.); (8) A copy of the Warden Ziegler's Response to Plaintiff's "Request for Religious Accommodation" dated May 21, 2012 (Id., p. 17.); (9) A copy of Plaintiff's "Inmate Request to Staff" dated May 1, 2012 (Id., p. 19.); (10) A copy of Plaintiff's "Informal Resolution Form" and Chaplain Largent's Response (Id., pp. 21 - 22.); (11) A portion of Administrative Remedy packet for Remedy ID 689645-F1 (Id., p. 24 - 27.); (12) A copy of Petitioner's Inmate Request to Staff dated June 17, 2012 (Id., p. 29.); (13) A copy of  religious written material submitted by Plaintiff to the BOP (Id., pp. 31 - 36.); (14) A copy of BOP's chart for "Transferrable Religious Property for Inmates" (Id., pp. 38 - 40.); (15) The Declaration of B. Seafus (Document No. 24-3.); (16) The Declaration of B. Mosley (Document No. 24-4, pp. 1 - 2.); (17) A copy of the "Position Description" for Associate Warden (Id., pp. 3 - 8.); (18) The Declaration of J. Vance (Document No. 24-5.); (19) A copy of Hornes v. United States, 2007 WL 1463028 (N.D.W.Va. May 17, 2007) (Document No. 24-6, pp. 1 - 12.); (20) A copy of Kay v. Friel, 2007 WL 295556 (D.Utah Jan. 26, 2007) (Id., pp. 13 - 17.); and (21) A copy of Lowry v. Bledsoe, 2007 WL 2788844 (N.D.W.Va. Sept. 24, 2007) (Id., pp. 18 - 30.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on January 8, 2013, advising him of the right to file a response to Defendants' "Motion to Dismiss,

or in the Alternative, Motion for Summary Judgment." (Document No. 26.)

By Proposed Findings and Recommendation entered on January 31, 2013, the undersigned recommended that Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order be denied. (Document No. 28.) Plaintiff filed his Objections on February 8, 2013. (Document No. 29.)

Also on February 8, 2013, Plaintiff filed his "Motion in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 30.) First, Plaintiff contends that Ms. Seafus informed him that the "Administrative Remedy Procedure was not the correct avenue to address issues of being denied accommodation to his legitimate religious needs and that plaintiff needed to talk to Chaplain Largent about those issues." (Id., p. 4.) Plaintiff further explains that "defendants have done everything in their power to prevent plaintiff from exhausting his administrative remedies and under such extreme and excessive circumstances, to which rules, regulations, and policies are not followed by authorities, anyone less experienced with the remedy procedures than the plaintiff would not have a hope of ever exhausting their administrative remedies in this lifetime." (Id., p. 10.) Second, Plaintiff argues that he "sued defendants in both their personal and official capacities, individual capacities for monetary damages and official capacities for an injunction." (Id., p. 11.) Third, Plaintiff argues that he should be allowed to recover for emotional and psychological damages "because the denial of accommodation to his legitimate religious needs has created a severe state of depression by denying him the opportunity of assembling with others and participating in worship services (such as the sacramental use of Sacred Pipe and Nicotiana Tobacum) with others of the same beliefs and practices by making him worship with others of a different faith." (Id.) Fourth, Plaintiff asserts that Defendants have

9

violated the First Amendment because his belief is both religious and sincere and "Defendants have unreasonably restricted plaintiff's right to freely practice his religion of New Age Druidry." (Id., pp. 11 - 12.) Fifth, Plaintiff states that "Defendants have substantially burdened the plaintiff without providing any least restrictive means in violation of RFRA." (Id., pp. 12 - 13.) Sixth, Plaintiff contends that Defendants violated the equal protection clause because the "Native Americans (a similarly situated group) are allowed use of a Sacred Pipe and Tobacco but the defendants denied the adherents of New Age Druidry the same basic tenants of their religion which also is the Sacred Pipe and Nicotiana Tobacum as a Central Component to the religion and Defendants have denied that Central Tenent as not being required, however, it should be noted that the Plaintiff is the final authority as to the requirements and dictates of New Age Druidry Grove #1 as he officiates as Supreme Grand Magister and Lord of the Grove." (Id., p. 13.) Finally, Plaintiff argues that Defendants are not entitled to qualified immunity. (Id., pp. 13 - 14.)

As Exhibits, Plaintiff attaches the following: (1) A copy of the "Rejection Notice - Administrative Remedy" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated July 26, 2012 (Remedy Id. 689645-R1) (Id., p. 16.); (2) A copy of the "Rejection Notice - Administrative Remedy" from the Administrative Remedy Coordinator at the Central Office dated September 7, 2012 (Remedy Id. 689645-A1) (Id., p. 17.); (3) A copy of the "Rejection Notice - Administrative Remedy" from the Administrative Remedy Coordinator at FCI Beckley dated July 25, 2012 (Remedy Id. 689645-F2) (Id., p. 18.); (4) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated July 30, 2012 (Id., p. 19.); (5) A copy of the "Rejection Notice - Administrative Remedy" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated September 4, 2012 (Remedy Id. 689645-R2) (Id., p. 20.); (6) A copy of a

"Request for Administrative Remedy" dated September 24, 2012 (Remedy Id. 689645-F2) (Id., p. 21.); (7) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated September 28, 2012 (Id., pp. 22 - 23.); (8) A copy of Regional Director C. Eichenlaub's Response to Plaintiff's Regional Administrative Remedy Appeal dated December 3, 2012 (Remedy Id. 689645-R3) (Id., p. 24.); (9) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated December 12, 2012 (Id., p. 25.); (10) A copy of Plaintiff's "Inmate Request to Staff" dated July 24, 2012 (Id., p. 26.); (11) A copy of the "Rejection Notice - Administrative Remedy" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated November 6, 2012, which was filed by Inmate Richard Allen Lumpkin (Remedy Id. 711349-F1) (Id., p. 27.); (12) A copy of Inmate Richard Allen Lumpkin s Request for Administrative Remedy dated October 23, 2012 (Remedy Id. 711349-F1) (Id., pp. 28 - 29.); (13) A copy of "The Great Zodiacal Ages" (Id., p. 30.); (14) A copy of "The Key of Solomon the King – S.L. MacGregor Mathers" (Id., pp. 31 - 32.); (15) A copy of a letter regarding "Retaliation of FCI-Beckley Staff" (Id., p. 33); (16) A copy a letter dated August 6, 2012, from Warden Joel Ziegler addressed to Plaintiff regarding Plaintiff's claim that he is being denied his "religious needs" (Id., pp. 34 - 35.); (17) A copy of Plaintiff's "Memorandum in Support" dated August 16, 2012 (Id., p. 36.); (18) A copy of a letter from Plaintiff addressed to the Office of Attorney General on August 20, 2012, regarding the "denial of religious accommodation" (Id., p. 37.); (19) A copy of the Declaration of Inmate David Hicks (Document No. 31.); (20) A copy of the Declaration of Inmate Kyle Johnson (Document No. 32.); (21) A copy of Plaintiff's Declaration (Document No. 33.); (22) A copy of the Declaration of Inmate Ricky LaForce (Document No. 34.); (23) A copy of the Declaration of Inmate Phillip Cline (Document No. 35.); (24) A copy of a Declaration of Inmate Michael S. Rhoton (Document No. 36.); and (25) A copy of a Declaration

of Inmate Richard A. Lumpkin (Document No. 37.).

## THE STANDARDS

### Motion to Dismiss Under Rule 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34,

112 S.Ct. 1728, 1734, 118 L.Ed.2d  340 (1992).

**Summary Judgment.**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

### 1.    Request for Injunctive Relief is Moot.

Under Article III, Section 2 of the Constitution of the United States, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d

43 (1998)(quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990)). This case or controversy requirement means that plaintiff must continue to have a personal stake in the outcome of the civil action when the Complaint is filed and when the case is decided. Id.; also see Arizonans for Official English v. Arizona, 520 U.S. 43, 68, 117 S.ct. 1055, 137 L.Ed.2d 170 (1997)("The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence.") If at any point in the proceeding there is no actual controversy, the case must be dismissed as moot. Id. When an inmate seeking injunctive relief is released from custody, the inmate no longer maintains a "sufficient interest in the outcome of the requested relief to present a justiciable case or controversy." Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983); also see Rendelman v. Rouse, 569 F.2d 182, 186 (4th Cir. 2009)("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.") In general, therefore, claims for injunctive relief become moot when the inmate is no longer incarcerated because the inmate is no longer subjected to the condition of which he complained. Reed, 719 F.2d at 693; also see Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007)("The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim.")

A narrow exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." Federal Election Commission v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). For this exception to apply, Plaintiff must demonstrate that his claim for injunctive relief possesses the following characteristics: (1) the duration of the

14

challenged actions were too short to be fully litigated prior to their cessation or expiration, and (2) a reasonable expectation exists that Plaintiff will be subjected to the same actions again. Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). The second characteristic requires that the same prisoner face the same alleged wrong at the same prison. Wolf v. Anderson, 2006 WL 218205, *3 (S.D.W.Va. Jan. 25, 2006)(J. Faber). Mere conjecture, however, that the prisoner may return to the first prison and again face the alleged wrong is not sufficient to meet the mootness exception. Higgason v. Farley, 83 F.3d 807, 810 (7th Cir. 1996).

Having examined Plaintiff's Complaint, the Court finds that Plaintiff challenges the conditions of his confinement at FCI Beckley. Plaintiff's transfer or release from custody, however, destroys the "case or controversy" requirement concerning his claims requesting injunctive relief. Specifically, Plaintiff requests that the Court order FCI Beckley to (1) regard New Age Druidry a separate religious program, (2) "provide accommodation to all religious components requested in the BP-S822 submitted on March 7, 2012;" (3) provide funds for purchasing items stated in his BP-S822.53 and the means and locations for practicing the religion, and (4) prohibit staff at FCI Beckley from retaliating against him and others in any way based upon his and their practice of their religious faith. (Document No. 4, p. 11.) The Bureau of Prisons' Inmate Locator indicates that Plaintiff is currently designated to Raleigh CCM[3] and his projected release date is October 10, 2013. Thus, Plaintiff's claim for injunctive relief is rendered moot by his transfer from FCI Beckley. Clearly, injunctive relief would have no impact on Plaintiff's rights or redress his claim of injuries. The undersigned further finds that the mootness exception does not apply. Since Plaintiff is currently

---

[3] According to the BOP's website, Community Corrections is an integral component of the BOP's correctional programs. The BOP contracts with residential reentry centers [RRCs], also known as halfway houses, to provide assistance to inmates who are nearing release.

located at a halfway house and his release date is fast approaching, the undersigned finds no reasonable expectation that Plaintiff will be subjected to same alleged misconduct at FCI Beckley. Accordingly, Plaintiff's claim for injunctive relief should be dismissed as moot.

**2.    Defendants Cannot be Sued in their Official Capacities:**

In their Motion, Defendants argue that they cannot be sued in their official capacities. (Document No. 25, p. 13.) Therefore, Defendants stated that "to the extent they are named in their official capacities, [they] must be dismissed, as an action against 'federal officers in their official capacities is essentially a suit against the United States, [and] such suits are [] barred under the doctrine of sovereign immunity . . ..'" (Id.)

In Response, Plaintiff asserts that "any official can be sued in their official capacities for an injunction and damages where the violation of a plaintiff's rights was the product of an official policy or an unofficial custom." (Document No. 30, p. 11.) Plaintiff further notes that he "sued the defendants in both their personal and official capacities, individual capacities for monetary damages and official capacities for an injunction." (Id.)

An inmate may name a federal officer in an individual capacity as a defendant in alleging a constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims for money damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002)("[A] Bivens action does not lie against either agencies or officials in their official capacities."); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Such claims are barred by operation of the doctrine of sovereign

immunity. McClosky v. Mueller, 446 F.3d 262, 271 - 272 (1st Cir. 2006)("The Bivens doctrine . . . does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities.") A plaintiff, however, may seek injunctive relief against a federal officer in his or her official capacity. Everett v. Francis, 2009 WL 2971359, * 4 (N.D.W.Va. Sep. 16, 2009)("[T]he *Bivens* requirement that suits do not lie against federal officers in their official capacity contemplates claims for monetary relief, not injunctive relief."); also see Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n. 10 (4th Cir. 2004)(stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); Community Mental Health Services of Belmont v. Mental Health & Recovery Bd., 150 F.Appx. 389, 401 (6th Cir. 2005)("[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the officials' job, i.e., his official capacity."); Singletary v. Fallen, 2012 WL 368375 (D.S.C. Jan. 17, 2012)(finding that sovereign immunity does not protect federal officials from suit naming them in their official capacities when injunctive relief rather than damages is sought.).

Based upon the foregoing, the undersigned finds that Plaintiff's Bivens action seeking monetary damages against Defendants in their official capacities should be dismissed. As stated above, Bivens claims seeking monetary damages are not actionable against defendants acting in their official capacities. The undersigned finds it unnecessary to address Plaintiff's argument that his claim for injunctive relief against Defendants in their official capacities should not be dismissed. As stated above, Plaintiff's request for injunctive relief is moot. Accordingly, the Court recommends that Plaintiff's claim for monetary damages against Defendants in their official capacity be dismissed.

3.      **FCI Beckley as a Defendant.**

In its Motion, Defendants argue there is "no <u>Bivens</u> action against the Bureau of Prisons." (Document No. 25, p. 14.) Defendants state that "as an institution within the Federal Bureau of Prisons, FCI Beckley must be dismissed as a defendant." (<u>Id.</u>) In Response, Plaintiff contends that FCI Beckley is a proper defendant. (Document No. 30, p. 11.) A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); <u>See also Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[4] The United States Supreme Court has held that an inmate may name a federal

---

[4]  Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary

officer in an individual capacity as a defendant in alleging a constitutional violation pursuant to

Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However,

Bivens claims are not actionable against the United States, federal agencies, or public officials acting

in their official capacities. See Meyer, 510 U.S. at 475, 484-86, 114 S.Ct. at 1005-06 ; Berger v.

Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold, 187 F.3d at 355 n. 7. FCI Beckley is not a

"person" as required by Bivens. As stated above, federal agencies are not proper defendants under

Bivens. Therefore, the undersigned concludes that FCI Beckley should be dismissed as a defendant.

**4.    Exhaustion of Administrative Remedies.**

In his Complaint, Plaintiff alleges that Defendants' conduct rendered the Bureau of Prisons'

administrative remedy procedure unavailable to him. Plaintiff states that in voiding his complaint

and not giving him any notification of it, staff at FCI Beckley did not follow the BOP's policies and

regulations in considering his complaint. Plaintiff further states that staff at FCI Beckley (1) require

inmates to submit their complaints on Inmate Request to Staff forms and then restate inmates'

complaints on Request for Informal Resolution forms thereby controlling the issues which inmates

raise at all levels of the administrative remedy process in denial of their rights of due process and

access to the Courts, (2) throw inmate complaints away, (3) do not process them "through the proper

channels" and (4) withhold from responding until the end of the time by which responses are due

so that the inmates will be barred from proceeding to the next level.

---

causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth
Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens*
action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other
distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are
available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens*
and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

In their Motion, Defendants "acknowledge that there was some confusion about Plaintiff's filing of administrative remedies initially, given that he had already requested relief for his issue through the use of the form request to Religious Services." (Document No. 25, p. 12.) Defendants, however, state that "once this issue was clarified, Plaintiff was not hindered in his ability to file administrative remedy requests." (Id.) Defendants assert that Plaintiff filed the instant case before fully pursuing the administrative remedy process. (Id.) Defendants explain that "[a]fter Plaintiff received the Warden's decision on his form New or Unfamiliar Religious Components Questionnaire on June 20, 2012, he filed the instant case on July 24, 2012, about the same time that he filed his second institution level remedy request, which was received on July 25, 2012." (Id.) Defendant contends that Plaintiff "has remedies available to him, and must exhaust his administrative remedies before filing a claim under Bivens." (Id., p. 13.)

In Response, Plaintiff argues that "it has been thoroughly demonstrated by the Plaintiff that the Defendants have done everything in their power to prevent Plaintiff from exhausting his administrative remedies and under such extreme and excessive circumstances, to which rules, regulations, and policies are not followed by authorities." (Document No. 30, p. 10.) Plaintiff contends that the Declarations of Michael Rhoton, Phillip Cline, and David Hicks establish that "there has been established a policy or custom which circumvents inmates from exhausting their administrative remedies." (Id.)

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[5] Woodford v. Ngo, 548 U.S.

---

[5] 42 U.S.C. § 1997e(a) provides as follows:

81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983,

152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all

inmate suits about prison life whether they involve general circumstances or particular episodes and

whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121

S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only

money damages must complete any prison administrative process capable of addressing the inmate's

complaint and providing some form of relief, even if the process does not make specific provision

for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief

is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002),

aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d

1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v.

Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only

"available" administrative remedies be exhausted. A grievance procedure is not "available" if prison

officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004);

Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies

for exhaustion purposes where inmate was unable to file a grievance because prison officials refused

to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir.

2001)(allegations that prison officials failed to respond to his written requests for grievance forms

were sufficient to raise an inference that inmate had exhausted his available administrative

remedies.)

---

No action shall be brought with respect to prison conditions under section 1983 of this
title or any other federal law, by a prisoner confined in any jail, prison, or other
correction facility until such administrative remedies as are available are exhausted.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative

remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13.

The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Based upon a review of the record, the undersigned finds that Plaintiff was not prevented from exhausting his administrative remedies. Although the record reveals that there was some confusion concerning the proper grievance procedure for religious requests, there is no evidence that

prison officials prevented Plaintiff from using the grievance procedure. On March 7, 2012, Plaintiff submitted a "New or Unfamiliar Religious Components Questionnaire" form [BP-S822.53] to Chaplain Largent requesting the recognition of the "New Age Druidry" faith. (Document No. 4-1, pp. 4 - 7.) On May 1, 2012, Plaintiff submitted an "Inmate Request to Staff" complaining that his religious needs were not being met. (Document No. 24-1, pp. 29 - 30.) Chaplain Largent responded on May 3, 2012, indicating that Plaintiff's BP-S822.53 request was being processed and would be resolved in 120 days. (Id., p. 31.) By "Memorandum For Joel Ziegler, Warden FCI Beckley" dated May 15, 2012, Chaplain Largent recommended that Plaintiff's religious request be "accommodated with the Wiccan program or through participation with the Wiccan adherents or as individual practitioners." (Document No. 24-2, p. 15.) Warden Ziegler denied Plaintiff's Request for Religious Accommodation (BP-S822.53) on May 21, 2012, but Plaintiff did not receive a copy of the denial until June 20, 2012. (Document No. 24-1, p. 40.) The Warden's Response stated that Plaintiff would be accommodated through the Wiccan program or as an individual practitioner. (Id.)

On May 23, 2012, Plaintiff filed an "Administrative Remedy Request" (BP-9) dated May 9, 2012, complaining that he was being denied religious accommodation (Remedy Id. 689645-F1.). (Id., p. 28.) On the same day Plaintiff's Administrative Remedy Request was voided because the Warden had denied Plaintiff's BP-S822.53's request and he "must file to Regional Office level through Religious Services forms." (Id., p. 27.) On June 7, 2012, Plaintiff filed an "Inmate Request to Staff" requesting a receipt slip for the BP-9 submitted filed on May 23, 2012. (Document No. 4-1, p. 19.) Ms. Seafus denied Plaintiff's "Inmate Request to Staff" on June 14, 2012, stating that "you have no receipts pending in the system." (Id.) On June 17, 2012, Plaintiff filed an "Inmate Request to Staff" requesting that certain religious items be provided so that his religious needs could be

accommodated through the Wiccan program. (Document No. 24-1, p. 42.) On June 20, 2012, Chaplain Largent responded that he was in the process of reviewing Plaintiff's request for religious items. (Document No. 24-2, p. 29.) On June 22, 2012, Plaintiff filed his "Regional Administrative Remedy Appeal" concerning his May 23, 2012, Administrative Remedy Request. (Document No. 1, pp. 3 - 4 and Document No. 30, p. 16.) On June 27, 2012, Plaintiff submitted an "Inmate Request to Staff" continuing to complain that he was being denied religious accommodation. (Document No. 24-1, p. 46.) By e-mail dated July 8, 2012, Chaplain Largent informed Counselor Grimes that Plaintiff's "request for a new religion was denied" and "[i]f he desires to add a new component to the Wiccan program he must submit a new religious component for the Wiccan program." (Id., p. 43.) Plaintiff's "Inmate Request to Staff" was denied on July 11, 2012. (Id., p. 44.) On July 22, 2012, Plaintiff's "Regional Administrative Remedy Appeal" filed on June 22, 2012, was rejected because he "did not provide a copy of [his] Institution Administrative Remedy Request (BP-9) form or a copy of the (BP-09) Response from the Warden (Remedy Id. 689645-R1). (Document No. 30, p. 16.) On July 24, 2012, Plaintiff filed his Complaint initiating the instant case. (Document No. 1.) Also on July 24, 2012, Plaintiff filed an "Inmate Request to Staff" complaining that he submitted an "Request for Administrative Remedy Request" on July 10, 2012, but he did not receive a "Notice of Receipt." (Document No. 30, p. 26.) On July 25, 2012, Plaintiff filed an "Administrative Remedy Request" complaining that he continues to be denied accommodation to religious needs (Remedy Id. 689645-F2). (Document No. 24-1, pp. 36 and 39.) On the same day, Plaintiff was informed that his Administrative Remedy Request was rejected because "inmate needed to file at Regional Office Level as Warden rejected his request for religious needs accommodation memo" (Remedy Id. 689645-F2). (Id., p. 39.) On July 27, 2012, Mrs. Seafus responded to Plaintiff's "Inmate Request to

Staff" dated July 24, 2012, by attaching a copy the Notice of Receipt. (Document No. 30, p. 26.) On

July 30, 2012, Plaintiff filed his "Regional Administrative Remedy Appeal" (Remedy Id. 689645-

R2). (Document No. 24-1, p. 38 and Document No. 30, p. 19.) The Administrative Remedy

Coordinator at the Mid-Atlantic Regional Office rejected Plaintiff's appeal on September 4, 2012,

because Plaintiff failed to "provide a copy of the institution Administrative Remedy Request (BP-9)

form or a copy of the (BP-09) Response from the Warden (Remedy Id. 689645-R2). (Document No.

24-1, p. 37 and Document No. 30, p. 20.) On August 6, 2012, Plaintiff filed a Central Office

Administrative Remedy Appeal (Remedy Id. 689645-A1). (Document No. 30, p. 17.) By Rejection

Notice dated September 7, 2012, Plaintiff's Central Office Administrative Remedy Appeal was

denied because he failed to "first file a BP-9 requests through the Institution for the Warden's review

and Response before filing an appeal at this level" (Remedy Id. 689645-A1). (Id.) After further

consultation with the Regional Office, Ms. Seafus and Ms. Mosely were advised on September 13,

2012, to accept Plaintiff's July 25, 2012, Administrative Remedy Request so he could work through

the normal procedure. (Document No. 24-1, p. 36.) By "Investigation Report for Administrative

Remedy # 689645-F2" dated September 20, 2012, Chaplain Largent stated that Plaintiff's

Administrative Remedy Request should be denied because "[t]he inmate needs to follow the correct

procedure to request a new religious component to the chapel." (Id., p. 35.) Chaplain Largent also

noted that he "explained the process [Plaintiff] needs to use to add a new religious component to the

chapel program." (Id.) On September 24, 2012, Warden Ziegler denied Plaintiff's Administrative

Remedy Request because Plaintiff had failed to file a BP-S822 with the Chaplain requesting that

new component be added to the Wiccan service (Remedy Id. 689645-F2). (Document No. 24-1, pp.

22 and 34 and Document No. 30, p. 21.) On September 28, 2012, Plaintiff filed his "Regional

Administrative Remedy Appeal." (Document No. 24-1, pp. 48 - 49 and Document No. 30, pp. 22

-23.) By Response dated December 3, 2012, Regional Director C. Eichenlaub informed Plaintiff that

his "request for New Age Druidry is a legitimate request and will be reviewed by the Chaplaincy

department to determine the appropriate accommodation."[6] (Document No. 24-1, p. 47 and

Document No. 30, p. 24.) Regional Director Eichenlaub also informed Plaintiff that if he was

dissatisfied with the Response, he could appeal to the General Counsel's Office within 30 days from

the date of the Response. (Id.) On December 12, 2012, Plaintiff filed his "Central Office

Administrative Remedy Appeal" stating that he "fully appreciat[ed] . . . the Regional Director's

response but I must ensure that all parties are aware of the current status which is that I have NOT

been accommodate as of yet." (Document No. 30, p. 25.)

 First, Plaintiff claims that Defendants rendered the administrative remedy process

unavailable because they refused to provide him with a "Notice of Receipt" concerning his

Administrative Remedy Request filed on May 23, 2012. Plaintiff filed his "Regional Administrative

Remedy Appeal" on June 22, 2012, but it was rejected because he "did not provide a copy of [his]

Institution Administrative Remedy Request (BP-9) form or a copy of the (BP-09) Response from

the Warden." Plaintiff claims that he was prevented from exhausting because he did not receive a

copy of the Notice of Receipt and therefore could not attach one to his Regional Appeal. Defendants,

---

 [6] Regional Director C. Eichenlaub stated as follows (Document No. 24-1, p. 47 and
Document No. 30, p. 24.):

> Further investigation reveals New Age Druidry is a recognized faith tradition.
> Therefore, there is no need to submit a New and Unfamiliar Religious Component
> form. Secondly, the BCP religious preference categories indicate New Age Druidry
> would fall under the "Pagan" preference category. Your request to be accommodated
> with time and space in the Religious Service programming will need to be reviewed
> and coordinated by the chaplaincy department if approved.

however, did not make the administrative remedy process unavailable. In his May 23, 2012, Administrative Remedy Request, Plaintiff complained that he was being denied religious accommodation and requested a response to his BP-S822. In response to Plaintiff's May 23, 2012, Administrative Remedy Request, staff informed Plaintiff that the Administrative Remedy Request was voided because the Warden had denied BP-S822.53's request and Plaintiff "must file to Regional Office level through Religious Services forms." Thus, Plaintiff was informed that the proper procedure was to file a request with the Regional Office concerning the denial of his BP-S822 by using the Religious Services forms.[7] Plaintiff, however, proceeded to appeal his voided

---

[7]   The Bureau of Prisons' Program Statement 5360.09 pertains to religious beliefs and practices and prescribes a procedure for the introduction of new and unfamiliar religious components into the Chaplaincy Services program as follows (PS5360.09, Pages 8 - 9):

b.     **Introduction of New and Unfamiliar religious Components.**

Inmates may request the introduction of new or unfamiliar religious components into the Chaplaincy Services program. When information is required regarding a specific new practice, the chaplain may ask the inmate to provide additional information which would be considered when deciding to include or exclude the practice from the Chaplaincy Services program.

(1) **Religious Issues Committee (RIC).** When a decision cannot be reached locally, a RIC at the Central Office, appointed by the Assistant Director, Correctional Programs Division (CPD), will review inmate requests for introducing new religious components into the overall religious program.

The RIC is to meet as necessary and maintain records of its recommendations. Periodically, the RIC will issue summary reports and recommendations to all Chief Executive Officers.

(2)**Requests.** Inmate requests are made by completing the New or Unfamiliar Religious Components Questionnaire form (BP-S822). This form along with sufficient documentation on which to base an informed decision, will be submitted to the chaplain for routing to the Central Office RIC through the Warden and Regional Director.

May 23, 2012, Administrative Remedy Request to the Regional Office where the appeal was rejected because Plaintiff did not attach a Notice of Receipt. It appears that a Notice of Receipt did not exist because the May 23, 2012, Administrative Remedy Request was voided.[8] Defendants acknowledge that there was some confusion as to the proper procedure for appealing requests for religious accommodation. Although there was apparently some confusion on the part of Defendants, the undersigned finds no evidence that the administrative remedy process was rendered unavailable. Defendants instructed Plaintiff to file a request with the Regional Office concerning the denial of his BP-S822 by use of the religious forms. Plaintiff, however, refused to follow Defendants' instructions and proceeded to file the instant action alleging the administrative remedy process to be unavailable.

Moreover, the undersigned notes that Plaintiff's July 25, 2010, Administrative Remedy request was accepted on September 13, 2012, after the Regional Office informed Ms. Seafus and Ms. Mosely to accept the Administrative Remedy Request so Plaintiff could work through the

---

Upon completing the review, the RIC will make recommendations to the Warden regarding the request's appropriateness. The Warden will determine the local disposition of the request after the institution received the RIC recommendations.

(3) **Implementation of the RIC Recommendation.** Decisions regarding the Chaplaincy Services program's expansion rest with the Warden and are subject to the institution's parameters for maintaining a safe and secure institution and availability of staff for supervision.

[8]  The record reveals that Defendants did not have a history of denying Plaintiff a "Notice of Receipt" in an effort to render the administrative process unavailable. On July 24, 2012, Plaintiff filed an "Inmate Request to Staff" complaining that he did not receive a "Notice of Receipt." On July 27, 2012, Mrs. Seafus responded by attaching a copy of the Notice of Receipt. (Document No. 30, p. 26.)

normal procedure.[9] (Document No. 24-1, p. 36.) The record reveals that Plaintiff clearly filed administrative remedy requests and appeals subsequent to the filing of his Complaint in the instance case. Additionally, it appears that Plaintiff's claims were addressed by Regional Director Eichenlaub's Response dated December 3, 2012. By Response dated December 3, 2012, Regional Director Eichenlaub informed Plaintiff that "your request for New Age Druidry is a legitimate request and will be reviewed by the Chaplaincy department to determine the appropriate accommodation." Accordingly, there is no evidence the Defendants rendered the administrative remedy process unavailable to Plaintiff.[10] It appears that Plaintiff merely became impatient with the administrative remedy process and filed his Complaint initiating the instant action.

Finally, Plaintiff argues that Affidavits from Inmates Michael Rhoton, Phillip Cline, and David Hicks support his claim that prison officials are preventing exhaustion by inmates. (Document

_____

[9] Plaintiff filed an "Administrative Remedy Request" on July 25, 2012, which was rejected the same day because "inmate needed to file at Regional Office Level as Warden rejected his request for religious needs accommodation memo." On July 30, 2012, Plaintiff filed his "Regional Administrative Remedy Appeal." The Administrative Remedy Coordinator at the Mid-Atlantic Regional Office rejected Plaintiff's appeal on September 4, 2012, because Plaintiff failed to "provide a copy of the institution Administrative Remedy Request (BP-9) form or a copy of the (BP-09) Response from the Warden (Remedy Id. 689645-R2). There is no allegation or indication that Plaintiff did not have a copy of his July 25, 2012, Administrative Remedy Request or the Response. (Document No. 4-1, p. 35 and Document No. 30, p. 8.) The undersigned notes that Plaintiff attaches a copy of the Rejection Notice as an Exhibit to his Amended Complaint filed on August 6, 2012. (Document No. 4-1, p. 35.) Plaintiff filed a Central Office Administrative Remedy Appeal on August 6, 2012. By Rejection Notice dated September 7, 2012, Plaintiff's Central Office Administrative Remedy Appeal was denied because he failed to "first file a BP-9 requests through the Institution for the Warden's review and Response before filing an appeal at this level." On September 13, 2012, Ms. Seafus and Ms. Mosely were advised by the Regional Office to accept Plaintiff's July 25, 2012, Administrative Remedy Request so he could work through the normal procedure.

[10] Although Plaintiff asserts that Defendants "purposely withhold responses to run time limits out so as to far further deny access to the next level," there is no indication that any of Plaintiff's administrative remedy appeals were denied as untimely.

31

Nos. 31, 35, and 36.) These Affidavits, however, are extraneous evidence and do nothing more than support Plaintiff's own self-serving allegations. The undersigned notes that the Affidavits from Inmates Rhoton, Cline, and Hicks relate to each inmate's personal experience regarding prison officials allegedly preventing exhaustion or retaliating against that inmate. Thus, the Affidavits do not support a finding or conclusion that prison officials retaliated against or prevented Plaintiff from exhausting his administrative remedies. Accordingly, the undersigned finds that prison officials did not prevent Plaintiff from utilizing the administrative remedy process and Plaintiff's Complaint should be dismissed based upon his failure to exhaust available administrative remedies.

**5.      Access to Court.**

Plaintiff claims that Defendants Seafus and Mosely made the administrative remedies process unavailable at FCI Beckley thereby depriving him of access to the Courts. A Complaint alleging deprivation of the right of access to the Courts must contain specific allegations respecting an injury which was actually sustained by the inmate as a result of the policies and procedures in effect at the place of incarceration or the conduct of prison officials. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Conclusory allegations will not suffice. Id. A prisoner must identify an actual injury resulting from official conduct. Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir.), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). As explained above, the undersigned finds that Defendants did not render the administrative remedies process unavailable as Plaintiff alleges. Additionally, Plaintiff was clearly able to file his Complaint with this Court initiating the instant proceeding. Finally, the record reveals that Plaintiff filed administrative requests and appeals following the filing of his Complaint. Accordingly, the undersigned finds that Plaintiff's above claim should be dismissed.

5.     **Retaliation.**

To prevail on a claim of retaliation, Plaintiff must demonstrate "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 F.2d 227 (1995). Bare assertions of retaliation however, do not rise to the level of a constitutional violation. See Adams, 40 F.3d at 74; White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Plaintiff claims that following his request for religious accommodation, Defendant Largent retaliated against him and the Wiccan group by (1) confiscating their Book of Shadows and a nine foot cord, and (2) interfering with their religious services on June 29, 2012. Defendant Largent contends that "Plaintiff's claims of retaliation are wholly conclusory and without factual support and must be dismissed." (Document No. 25, 23 - 25.) In support, Defendants attach the Declaration of Defendant Largent. (Document No. 24-2, pp. 1 - 5.) Defendant Largent declares that he did not retaliate against Plaintiff in any way. (Id., p. 5, ¶¶ 47 and 51.) Defendant Largent states that the search of the Wiccan group's locker was not done as an act of retaliation. (Id., ¶¶ 47 and 48.) Specifically, Defendant Largent explains as follows:

> 48.     Shortly after the issues with Plaintiff began, an inmate in the Special Housing Unit requested some Wiccan materials. As the Supervisory Chaplain, I had access to the lockers in the chapel which are assigned to each religious group. I went into the Wiccan group's locker to obtain materials for the SHU inmate and discovered a 30 foot rope. Because this could be a possible escape tool and was a security concern for the prison, I confiscated the rope and turned it over to the Lieutenant's Office. I also confiscated other items which appeared to be of a personal nature, as personal items are not permitted in the religious services lockers. From the Wiccan group's locker, I also confiscated a binder of paperwork which appeared to be of a personal nature. This binder turned out to be the group's Book of Shadows. When one of the inmates approached me and explained the nature of the book, I returned it to the group.

33

49.     After the discovery of the rope, all of the various religious group lockers were searched in an effort to identify and remove any contraband, and thus the Wiccan group was not targeted for retaliation.

50.     Plaintiff never complained to me at the time about the locker search nor requested a return of any of the material on behalf of the Wiccans.

(Id., ¶¶ 48 - 50.) The record does not support a finding that the above conduct was the result of retaliation by Defendant Largent. Defendant Largent had legitimate reasons for accessing the Wiccan locker[11] and for removing prohibited items. BOP policy provides that religious group lockers are for the storage of group property, and chapel staff are responsible for searching the storage areas on a frequent and irregular basis. BOP Technical Reference Manual T5360.02, Ministry of BOP Chaplains, p. 30. Although Defendant Largent may have incorrectly removed the Book of Shadows, there is no indication that Defendant Largent removed the item based upon retaliatory motive. Furthermore, the Book of Shadows was returned once Defendant Largent was inform by the Wiccan group of the nature of the book. Although Plaintiff continued to request religious accommodation by use of the administrative remedy process, there are no further allegations of retaliatory conduct by Defendants. Plaintiff's conclusory allegation that Defendant Largent engaged in retaliation by searching and confiscating items from the Wiccan locker is insufficient. Accordingly, Plaintiff's

---

[11]   Program Statement 5360.09, Section 10(a)(1) provides as follows:

SHU Religious Access. Ordinarily, all inmates, except those in the SHU, have access to regularly scheduled congregate services. Inmates of all faiths will have regular access to chaplains. Upon written request, inmates may also have access to recognized representative of their faith groups while in SHUs. Each chaplain will provide pastoral care in SHUs and hospital units weekly.

Chaplains will provide opportunities for individuals to receive the sacraments and sacred rituals in SHUs. This includes, but is not limited to, communion and Sabbath prayer items - - matzo and grape juice. Ordinarily, sacred pipe use will be accommodated in Administrative Detention. The Warden may determine the circumstances under which the sacred pipe may be used in Disciplinary Segregation.

claim of retaliation should be dismissed.

**6.      Emotional or Psychological Damages.**

In their Motion, Defendants argue that "Plaintiff cannot recover for emotion or psychological damages without a showing of physical injury." (Document No. 25, p. 13.) Defendants contend that "no inmate may bring any civil action against the United States or an employee of the Government for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Id., pp. 13 - 14.) Defendants note that "Plaintiff does not allege any physical injury." (Id., p. 14.) Defendants, therefore, asserts that Plaintiff's "claims for compensatory and punitive damages for alleged emotional or mental injuries are not permitted." (Id., p. 14.) In Response, Plaintiff argues that he suffered physical injury "because the denial of accommodation to his legitimate religious needs has created a severe state of depression. (Document No. 30, p. 11.)

The Prison Litigation Reform Act [PLRA] expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D.Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional

distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001), quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted).

Plaintiff requests compensatory and punitive damages[12] for the "emotional/mental anguish due to forcing me to violate my beliefs and practices." (Document No. 4, p. 11.) Plaintiff fails to allege any facts supporting the existence of a physical injury as the result of Defendants' conduct. Plaintiff's conclusory allegation that he suffered emotional and mental anguish because Defendants

---

[12] To the extent Plaintiff is requesting punitive damages for the alleged violations of his constitutional rights, the undersigned finds that the evidence fails to support an award of punitive damages. Punitive damages may be awarded for "conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987), quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). The Fourth Circuit has determined that "callous indifference" required for punitive damages is the same as the deliberate indifference required for a finding of liability in a Bivens or 1983 claim. Id. at 948. Based on a review of the record, the undersigned finds no evidence that Defendants were deliberately indifferent to Plaintiff's religious needs. Chaplain Largent investigated Plaintiff's BP-S822 request that the New Age Druidry be recognized as a new faith at FCI Beckley. Following his investigation and discussion with Regional Chaplain Huertas, Chaplain Largent recommended that the "new religion could be accommodated with the Wiccan program, through participation with the Wiccan adherents, or as an individual practitioner, though it did not need to be recognized as a new religion at FCI Beckley." Thus, Warden Ziegler responded to Plaintiff's BP-S822 that his "request will be accommodated through participation with the Wiccan program or as an individual practitioner." Subsequently, Plaintiff requested certain religious items so he could be accommodated in the Wiccan program. Chaplain Largent investigated Plaintiff's request by reviewing materials submitted by Plaintiff, contacting the Universal Life Church that was identified by Plaintiff as the national headquarters of his church, and consulting with the Wiccan volunteer at FCI Beckley. After reviewing the material submitted by Plaintiff, Chaplain Largent concluded that the materials did not support a need for the requested items and that the document entitled "New Age Druidry" was a document created by Plaintiff. Further, the President of the Universal Life Church "had no details of the tenents or practices of the church." Following the investigation by Chaplain Largent, Plaintiff's request was denied because the items were not approved components of the Wiccan program. Chaplain Largent and Warden Ziegler instructed Plaintiff to file a BP-S822 requesting that new components be added to the Wiccan program, which Plaintiff failed to do. Accordingly, there is no evidence that Defendants were deliberately or callous indiffert to Plaintiff's constitutional rights.

forced him to violated his religious beliefs and practices is inadequate. Accordingly, Plaintiff's claim for money damages fails to state a claim for which relief may be granted.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 24.), **DENY** Plaintiff's "Motion in Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 30.), **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 4.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 9, 2013.

R. Clarke VanDervort
United States Magistrate Judge